1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

UNITED STATES OF AMERICA, et al.

Case No. 2:13-cv-00167-APG-PAL

8

Plaintiffs,

ORDER

9

v.

(Mot to Unseal Related Actions – Dkt. #117)

10

CREEKSIDE HOSPICE II, LLC, et al.,

11

Defendants.

12          Before the Court is Defendants' Motion to Unseal Related Actions (Dkt. #117).   The

13   court has considered the motion, the United States' Response (Dkt. #119), and Defendants'

14   Reply (Dkt. #126).

15                                    **BACKGROUND**

16   **I.      Procedural History**

17          This case is a consolidated *qui tam* action initiated by two private citizens under the

18   provisions of the Federal False Claim Act ("FCA"), 631 U.S.C. § 3730(b).  Both actions were

19   filed by two former hospice care workers employed by Creekside, under seal, in accordance with

20   31 U.S.C. § 3730(b)(2).  The first case was filed by Plaintiff/Relator, Joanne Cretney-Tsosie,

21   against Creekside Hospice II, LLC and Skilled Healthcare Group, Inc. for violations of the

22   United States False Claim Act 31 U.S.C. § 3729 *et seq.*, and the Nevada False Claim Act, NRS

23   357.070 *et seq.*  The Complaint was initially filed in camera and under seal.

24          The second complaint, Case No. 2:13-cv-1283, was filed by Plaintiff/Relator Veneta

25   Lepera against Skilled Healthcare LLC, Creekside Homecare II, LLC, and Creekside Hospice II,

26   LLC doing business as Creekside Home Healthcare ("Creekside").  It was also filed in camera

27   and under seal.

28

1

After multiple applications and court orders granting extensions of time for the United States and State of Nevada to elect to intervene, the United States and State of Nevada filed a Notice of Election to Intervene in Part, and to Decline to Intervene in Part (Dkt. #34) in the Joanne Cretney-Tsosie ("Cretney-Tsosie") action, Case No. 2:13-cv-00167 on August 6, 2014. The United States also filed a Notice of Election to Intervene in Part, and to Decline to Intervene in Part (Dkt. #18) in the Veneta Lepera ("Lepera") action, Case No. 2:13-cv-01283 on August 6, 2014. The United States and State of Nevada filed a Motion to Consolidate Actions (Dkt. #36) in the Cretney-Tsosie case, and (Dkt. #20) in the Lepera case on August 7, 2014. Both motions to consolidate were filed under seal and cited Fed. R. Civ. P. Rule 42(a) as authority for the consolidation. The motions to consolidate were granted in sealed orders entered August 14, 2014, (Dkt. #37) in Cretney-Tsosie, and (Dkt. #23) in Lepera. Both cases were consolidated with Case No. 2:13-cv-00167 serving as the base case.

The United States and State of Nevada's Notice of Election to Intervene in Part, and Decline to Intervene in Part in Cretney-Tsosie (Dkt. #34) was initially filed ex parte and under seal, but is now part of the public record. The district judge entered an Order (Dkt. #38) on August 18, 2014: (1) unsealing the notice of election to intervene in part, and decline to intervene in part and his order; (2) giving the United States and State of Nevada 90 days to serve their complaint; (3) directing the Relator's complaint be unsealed on the filing and service of the United States and Nevada's complaint in intervention; (4) requiring the Relator to serve its complaint upon Defendants within 90 days; (5) directing that all other papers or orders on file in this case remain under seal; (6) directing that the seal be lifted on all other matters occurring in this action after the date of the order; (7) directing that as to the part of this action in which the United States and Nevada declined to intervene, that the parties serve all pleadings and motions filed in that part of the action, including the supporting memoranda, upon the United States and Nevada as provided for in 31 U.S.C. § 3730(c)(3) and NRS 357.130(1); (8) requiring that all orders of the court be sent to the United States and Nevada; and (9) providing that should the Relator or the Defendant propose that part of the action in which the United States and Nevada have declined to intervene be dismissed, settled, or otherwise discontinued, that the court would

provide the United States and Nevada with notice and an opportunity to be heard before ruling or granting its approval.  A similar order was entered in Lepera on August 13, 2014.  *See*  (Dkt. #21).

On August 26, 2014, Judge McKibben recused himself in both cases.  *See* Minute Order in Cretney-Tsosie (Dkt. #39) and Lepera (Dkt. #24).  The consolidated case was reassigned to Judge Gordon and the undersigned.  *See* Minute Order in Chambers (Dkt. #40).  The minute order reassigning this case indicated that all further documents must bear the correct case number 2:13-cv-00167-APG-PAL.

Plaintiff Lepera filed a Notice of Partial Voluntary Dismissal (Dkt. #26) on February 24, 2015, dismissing claims involving allegations of illegal "inducements and remuneration," but continuing as a party, and joining the United States and State of Nevada in the complaint in intervention.

After the cases were consolidated and reassigned to Judge Gordon, the Department of Justice ("DOJ") requested and received an extension of time to file a complaint in intervention. *See* Order (Dkt. #55).  The Second Amended Complaint (Dkt. #52) was filed by the United States and State of Nevada on November 25, 2014.  Plaintiff/Relator Joanne Cretney-Tsosie filed a Notice of Voluntary Dismissal (Dkt. #53) November 25, 2014, voluntarily dismissing, without prejudice, the claims in her First Amended Complaint related to Defendants' pre-2010 conduct, submission of false claims to payors other than Medicaid and Medicare, and failure to meet the voluntary workforce requirement.  However, she continued as a party to this action on all remaining claims and joined and incorporated by reference the entirety of the complaint in intervention.

With a few exceptions, all of the papers filed in this action after the cases were consolidated are on the public docket and not sealed.

## II.    The Motion to Unseal.

### A. Creekside's Motion.

In the current motion, Creekside seeks to unseal all docket entries and pleadings in both *qui tam* cases before and after consolidation.  The motion requests unsealing the original

complaints, amended complaints, all ex parte requests for extension of time, and other ex parte requests for judicial relief.  It argues that Creekside has a compelling need to review the entire dockets of all related cases to prepare its defenses and perform its discovery because the United States admitted in response to Creekside's motion to enforce the court's prior discovery order that it could not fully identify all of the false claims submitted by Creekside for sample patients, the false statements relating to those false claims, nor how they were caused to be submitted.

Creekside acknowledges that private parties acting as Relators may file suit on behalf of the United States alleging fraud under the FCA under seal and are required to provide the government with a complaint and a written disclosure of the supporting evidence.  While the government evaluates whether to intervene, the case remains under seal pursuant to 31 U.S.C. § 3730(b)(2).  The purpose of the sealing provisions is to protect the government's interest in criminal matters by enabling it to investigate the alleged fraud without tipping off investigative targets at a sensitive stage.  However, once the government elects to intervene, it conducts the action, has primary responsibility for prosecuting the action, and the Relator's interest is only commercial and pecuniary.  After intervention, the United States remains the real party in interest.

In this case, DOJ sought and received multiple extensions from the court beyond the 60 days initially allowed by statute to decide whether or not to intervene.  DOJ did not elect to intervene until 25 months after Ms. Cretney-Tsosie's first amended complaint was filed.  All of the requests for an extension are under seal.  Creekside believes the sealed portions of the record are material to allegations of the government's complaint and necessary for it to defend against the claims.  Creekside asserts there is no compelling need to keep the action under partial seal even if the Relators and the government prefer this.  Creekside maintains that it is entitled to assess the original allegations, how they changed, how the facts are presented by the Relators, the basis of any extension, and the court's partial unsealing of the actions in 2013.  Creekside's intention is to examine the complete record in both cases to assess factual inconsistencies and deviations by the parties.  Because there are two competing *qui tam* actions, Creekside seeks to assess the first to file rule under the FCA which bars subsequently filed suits.  Creekside also

1   intends to assess the extensions granted to the government to assess why it delayed advising

2   Creekside of the identity of the Relators.

3        Creekside claims that the "procedural chronology of this case has many oddities that may

4   have been injurious to Creekside."   As an example, Cretney-Tsosie filed an original *qui tam*

5   action in July 2012, after she resigned as an employee from Creekside.  Creekside claims she

6   removed corporate documents and patient records without authorization.   She resumed

7   employment with Creekside in September 2013, but did not tell Creekside about her pending *qui*

8   *tam* action.  After rejoining Creekside, she continued to surreptitiously remove and use corporate

9   records for this case, providing them to her counsel, and eventually to the DOJ.   Creekside

10  believes she removed over 10,600 pages from Creekside under false pretenses and argues it is

11  entitled to full discovery of who knew what and when, to defend allegations and to assert

12  potential counterclaims or other remedies for unauthorized removal of business and clinical

13  records.

14       Finally, Creekside intends to assess and potentially assert defenses about the amount of

15  time these cases remained under seal because it may constitute an abuse of process.  Creekside

16  argues that the government is not allowed to engage in one-sided litigation and oppose the

17  motion to dismiss on the basis of evidence of false claims that it failed to produce in response to

18  discovery requests and court orders, while admitting it does not have the evidence needed to

19  respond despite multiple extensions prior to intervention.  Creekside believes that it is entitled to

20  establish a record on how the government received extensions and subjected it to impermissible

21  one-sided litigation, and removal of a large quantity of corporate records for use in this

22  proceeding.   It believes that the government has used the under seal period as a means of

23  conducting unchecked discovery in an effort to build a more complete case against it which is a

24  practice at least one court has found was not contemplated by Congress and not authorized by the

25  FCA.

26       A number of courts have held that the FCA gives the court authority to maintain the

27  filings under seal and to make them available to the parties.   The courts routinely unseal the

28  dockets of *qui tam* actions once litigation is under way.  There is a strong presumption in favor

of public access to judicial proceedings and access is critical for Creekside to adequately evaluate the allegations against it and assert all potential defenses. The presumption in favor of unsealing is overcome if a party opposing unsealing meets the compelling reasons standard articulated by the Ninth Circuit in *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003). The court should conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret. In this case, Creekside has a compelling interest to review all allegations leveled against it. Unsealing the records will not jeopardize an ongoing investigation, reveal confidential investigative techniques, or impair third parties because the Relators have revealed their allegations to DOJ which has included aspects of those allegations in its complaint in intervention. Transparency in judicial administration of cases and Creekside's own right to assess and defend the allegations compels a complete unsealing of both consolidated actions.

**B. The United States' Response.**

The United States opposes the motion in a pithy response which asserts many of the sealed documents detail the status of the ongoing confidential investigation conducted by the United States and State of Nevada. 31 U.S.C. § 3730(b) allowed Relators and the United States to submit all filings in this case under seal before the United States and State of Nevada decided to intervene. The filings that were sealed include: (1) the Relators complaint and amended complaints, and written disclosure of substantially all material evidence and information required by 3730(b)(2); (2) requests by the United States and State of Nevada for extensions of time to decide whether to intervene, which described the status of the ongoing confidential investigation; (3) requests to partially lift the seal to permit disclosure of the complaints to the Defendants and Relators in these actions; (4) appearances by counsel; and (5) court orders on these various matters.

The United States cites an unpublished decision in this district denying a motion to unseal an FCA action on the grounds the sealed filings provided nothing useful to the defense. The United States also cites *United States ex rel O'Keefe v. McDonald Douglas Corp.*, 902 F. Supp. 189, 192 (E.D. Mo. 1995), which denied Defendant's request to unseal the United States'

extension requests and supporting affidavits and memoranda because they provided substantive details regarding the government's methods of investigation.  The decision found there would be harm associated with disclosure of the details.

The government acknowledges that several courts have unsealed documents in other *qui tam* cases brought under the FCA.  However, most of these cases have found that there would be something useful to the defense.  Defendants have not identified any material issue involved in the case for which any of these sealed filings would provide any factual relevant information they do not already have.  Instead, the Defendants want them because they are curious about what the United States was doing in 2013 and 2014 before it intervened.

The United States also argues that the Defendants' discussion about the strong presumption of public access is misplaced under the FCA because Congress explicitly required the filings be made under seal to protect the United States' investigation and to prevent the disclosure of investigative techniques.  The public does not have a right to know how the United States conducts confidential investigations of healthcare fraud.  Rather, the public is entitled to know how the litigation is conducted from the point the United States decides to intervene.

**C.  Cretney-Tsosie's Response.**

Plaintiff/Relator Joanne Cretney-Tsosie filed a response to Defendants' Motion to Unseal which argues the court should deny the motion in whole or in part because it would allow disclosure of confidential patient information, including the names of patients from Creekside Hospice II, LLC contained in Relator's complaint and first amended complaint.

Cretney-Tsosie disputes that she obtained corporate records from the company under false pretenses and argues that Defendants' assertions about this are inaccurate and problematic for several reasons.  First, "Defendants have failed to properly present to the Court any matter pertaining to their assertion that the Relator improperly took documents" and are using these allegations as a tactic to malign her and influence the court's decisions.  Cretney-Tsosie has worked in hospice for over a decade and serves as a minister frequently writing and speaking on issues of faith.  She worked at Creekside as a hospice nurse and clinical manager from November 2011, to May 2012, and again from September 2013, to approximately February

2015.  She disputes that she returned to employment under false pretenses.  Rather, Creekside solicited her for re-employment.  She merely maintained her legal obligation under the FCA to maintain confidentiality of matters submitted under seal during the government's investigation of the complaint.  She acknowledges that she took documents she believes supported her suspicion of massive Medicare fraud which were turned over to her counsel and eventually to the government.  Some of these documents included attorney/client privileged materials, publicly-available documents, and documents coming into her possession because of her position with Creekside.

Cretney-Tsosie asserts that she was well within her rights to take these documents and provide them to the government because the FCA requires written disclosure of substantially all material evidence and information the Relator possesses to be provided to the government.  The Ninth Circuit has recognized the importance of providing a *qui tam* Defendant's documents to the government, even when a Relator has explicitly signed a confidentiality agreement prohibiting disclosure.

Cretney-Tsosie states she provided additional documents to the government when she separated from employment with Creekside for the second time.  In February 2015, she agreed to return all documents to Defendants that potentially could be characterized as company property.  These documents were Bates-stamped JCT 000001 through 010613, and included documents from both rounds of her employment at Creekside.  The second round of documents was not produced to the government until February 21, 2015, when Relator's counsel provided them to the United States because of the ongoing *qui tam* litigation, and to support Relator's collaboration with the government in litigating this case.  She asserts that the government did not receive or review the second round of documents until more than seven months after the complaint in intervention was filed.  As a result, the government could not have relied on these additional documents in drafting its complaint in intervention or in the litigation as Defendants have maintained.  She therefore requests that the court deny the motion to unseal because the sealed documents include privileged documents, and other materials protected from disclosure.

8

1   Alternatively, if the court grants the motion, she requests that the patient names in Relator's

2   complaint and amended complaint be redacted prior to unsealing.

3       **D.  Creekside's Reply.**

4       Creekside replies that the motion to unseal identifies several reasons why the case should

5   be unsealed in its entirety.   The government has acknowledged that it filed its notice of

6   intervention, a complaint, and amended complaint without determining the existence of one false

7   claim, false certification or false statement to support a false claim.   In a Status Report (Dkt.

8   #112), the United States stated it had no objection to unsealing the Relator's complaints.

9   Creekside seeks the ex parte extensions and "the ex parte partial lifting of the seal" which the

10  United States still argues should remain sealed.   Creekside reiterates arguments that these

11  categories of sealed pleadings and orders are essential to fully assess its defenses and potential

12  affirmative requests for relief, including the counterclaim for the unlawful removal of 10,600

13  pages of corporate documents by one of the Relators.   The government has cited no legal

14  authority for its claim that FCA actions are entitled to a higher level of secrecy than other

15  government actions once the government has elected to intervene.   The government has not met

16  its burden of showing good cause to overcome the strong public interest in disclosure.   By

17  definition, an FCA complaint alleges a fraud upon the public and therefore implicates the public

18  interest.

19      Creekside asks that the court review the documents in camera to determine whether any

20  compelling reason exists to keep the records under seal.   The two cases cited by the government

21  require the court to make an in camera review of the documents to determine whether they

22  should remain sealed.   It is unlikely that any reason remains for the documents to remain sealed

23  and the court should therefore grant the motion.

24                          **DISCUSSION**

25      The qui tam provisions of the FCA authorize private parties acting as "relators" to file

26  suit on behalf of the United States alleging fraud.   *See* 31 U.S.C. § 3730(b).   Relators must file

27  *qui tam* complaints under seal, and must provide the government with the complaint and a

28  written disclosure of the supporting evidence.   *Id.*   The government has 60 days to decide

whether to intervene, but may obtain extensions upon a showing of good cause.  31 U.S.C. § 3730(b)(2)-(c).  A *qui tam* action remains under seal while the government evaluates whether to intervene.  31 U.S.C. § 3730(b)(2).  Sealing is authorized to "protect the Government's interests in criminal matters" by enabling the government to investigate the alleged fraud without tipping off the targets of the investigation at a sensitive stage.  *United States ex rel. Yesudian v. Howard University*, 153 F.3d 731, 743 (D.C. Cir. 1998).

The Ninth Circuit has held that the purpose of *qui tam* actions is to encourage more private false claim litigation.  *United States ex rel Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995) (citing the Congressional Record).  Congress intended to strike a balance between the purpose of *qui tam* actions and law enforcement needs by enacting the seal provision.  *Id.*  The seal provision allows the government an adequate opportunity to fully evaluate the Relator's claim to determine if the government is already investigating and whether it is in the government's interest to intervene.  *Id.*  The seal provision balances these two interests "by allowing the *qui tam* Relator to start the judicial wheels in motion and protect his litigative rights, while allowing the government the opportunity to study and evaluate the Relator's information for possible intervention in the *qui tam* action or in relation to an overlapping criminal investigation."  *Id.*

The government concedes that a number of courts to address the issue have concluded that, once the government elects to intervene, filings in the matter should be unsealed.  The government cites *United States ex rel O'Keefe v. McDonald Douglas Corp.*, 902 F.Supp 189 (E.D. Mo. 1995) for the proposition that the court may deny a defendant's request to unseal the United States' extension requests and supporting affidavits where they provide substantive details regarding the government's methods of investigation.  However, as Creekside correctly points out, the court made its findings only after conducting an in camera review.  In *O'Keefe*, the district judge followed two other published decisions from the Southern District of New York which reasoned that because the False Claim Act permits in camera submissions, "the statute necessarily gives the court discretionary authority over whether to maintain the secrecy of such

1    submissions." *Id.* at 191 (citing *United States v. CACI Int'l Inc.,* 885 F. Supp 80, 83 (S.D.N.Y.

2    1995), and *United States ex rel Mikes v. Straus*, 846 F.Supp 21, 23 (S.D.N.Y. 1994)).

3         In all three cases, the courts exercised their discretion after balancing a defendant's

4    request for sealed documents against the harm to the government risked by disclosure.  In the

5    two Southern District of New York cases, the courts found that the documents the government

6    sought to maintain under seal did not disclose any confidential investigative techniques,

7    information which could jeopardize an ongoing investigation, or matters which would injure

8    non-parties.  The courts found that the sealed documents merely described routine, general

9    investigative procedures which did not implicate specific people or provide any substantive

10   details.  As a result, no harm would result to the government if the documents filed prior to

11   intervention were unsealed.  The *McDonald Douglas* court conducted an in camera review of the

12   government's request for extensions of time and accompanying memoranda and affidavits and

13   concluded they provided substantive details regarding the government's methods of

14   investigation.  Balancing the harm to the government if its motions for extension of time and

15   accompanying memoranda and affidavits were unsealed with the movant's purported need for

16   the documents, the court found that the harm outweighed the need and declined to lift the seal

17   regarding those documents.  However, the court ordered the seal lifted as to other documents

18   filed prior to the government's notice of intervention.

19        A number of courts have been critical of the length of time *qui tam* actions have remained

20   under seal and the government's handling of the actions while deciding whether to intervene.

21   *See, e.g., United States ex rel Martin v. Life Care Centers of America*, 912 F.Supp 2d 618 (E.D.

22   Tenn. 2012); *United States ex rel Costa v. Baker & Taylor, Inc.*, 955 F.Supp 1188, 1199 (S.D.

23   Cal. 1997).  Both cases pointed out that the FCA sealing provision was intended to give the

24   government a 60-day period of time to determine whether it is already investigating the claims

25   stated in the suit and to consider whether it wished to intervene.  Both cases were critical of the

26   number of extensions the government sought while it conducted extensive unchecked discovery

27   in an effort to build a more complete case against the defendant.  ("This practice of conducting

28   one-sided discovery for months or years while the case is under seal was not contemplated by

1    Congress and is not authorized by the [FCA]."  *United States ex rel Costa v. Baker & Taylor,*
2    *Inc.*, 955 F. Supp. at 1191.)

3         In *Martin*, the court found that the FCA contemplated a fairly straightforward process for
4    *qui tam* complaints allowing the Relator to file a complaint under seal and allowing the
5    government 60 days to determine whether it wishes to intervene.  912 F. Supp. at 626.  The court
6    found that "clearly, the FCA contemplates lifting the seal on the Relator's complaint once the
7    Government has decided whether to intervene."  *Id.*  However, the FCA is silent as to the
8    continued sealing of other documents.  *Id.*  The court concluded that nothing in the text of the
9    FCA authorizes an indefinite seal of record materials beyond the complaint.  *Id.*  The court also
10   found that even assuming the FCA permitted the continued indefinite sealing of certain
11   documents, which the court characterized as a "dubious proposition," that it was clear the
12   government would be required to demonstrate "good cause" as a prerequisite to continued
13   sealing.  *Id.*  Recognizing the long-established legal tradition of public access to court
14   proceedings, the court concluded that the government had not demonstrated sufficient good
15   cause to support its request to continue to seal the *qui tam* action.  It denied the government's
16   request to retain certain documents under seal and ordered that case unsealed in its entirety.  *Id.,*
17   at 627.

18        As a general matter, there is a strong presumption of access to judicial records.
19   *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  "In keeping with
20   the strong public policy favoring access to court records, most judicial records may be sealed
21   only if the court finds 'compelling reasons'."  *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025–26
22   (9th Cir. 2014) (citing *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010)).
23   However, public "access to judicial records is not absolute."  *Kamakana*, 447 F.3d at 1178.

24        The Ninth Circuit has carved out an exception to the strong presumption of access for
25   certain discovery materials where the movant makes a particularized showing of "good cause"
26   under Rule 26(c) of the Federal Rules of Civil Procedure that rebuts the public's right of access.
27   *See Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1135, 1138 (9th Cir. 2003); *Phillips v.*
28   *Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) *see also* Fed. R. Civ. P. 26(c) (a district

court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense").  The "less exacting 'good cause' standard" applies (1) to "private materials unearthed during discovery," as such documents are not part of the judicial record, and (2) to "previously sealed discovery" attached to non-dispositive motions.  *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) (citing *Pintos*, 605 F.3d at 678).  *See also Foltz*, 331 F.3d at 1135 (holding that the *Phillips* exception is "expressly limited to the status of materials ... attached to a *non-dispositive* motion") (emphasis in original).  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test."  *Foltz*, 331 F.3d at 1130.

The FCA requires Relators to file *qui tam* complaints under seal and gives the government 60 days to decide whether to intervene.  The FCA contemplates lifting the seal on the Relator's complaint once the government has decided whether or not to intervene.  However, the FCA is silent regarding whether other documents should remain sealed once the decision about intervention has been made.  The court agrees with those courts that have reasoned that nothing in the text of the FCA authorizes the government to obtain an indefinite seal of the record.  The Ninth Circuit has held that the purpose of the seal provision is to allow the government an adequate opportunity to fully evaluate the Relator's claim to determine if the government is already investigating, and whether it is in the government's best interest to intervene.  Another purpose of the seal provision is to allow the government to investigating potential fraud without tipping off a potential target at a sensitive stage.  Neither of those purposes would be served where, as here, the government has elected to intervene after more than two years of investigation.

The United States sought and obtained leave of the court to unseal the Relator's complaint and amended complaint for the purpose of sharing the information with Defendants in furtherance of potential settlement.  In a Status Report (Dkt. #112) the government stated it had no objection to unsealing the Relators' complaints and amended complaints.  Relator Cretney-Tsosie opposes unsealing the complaint and amended complaint asserting they contain patient information and other unspecified privileged material.  However, a review of the pleadings

reflects they merely provided two letter initials for a handful of sample patients used to illustrate the nature of the alleged fraud.  Of the remaining categories of documents that are sealed the court can discern no reason at all why (1) the United States request to partially lift the seal to prevent disclosure of the complaints to Defendants and Relators in these actions, (2) appearances by counsel and (3) court orders on these matters should remain sealed.

With respect to the United States and State of Nevada's requests for extensions of time to decide whether to intervene, the court has conducted an *in camera* review.  The court finds nothing in the requests for extensions that would disclose any confidential investigative technique or method, or any other information which could jeopardize an ongoing investigation.  The documents describe routine general investigative procedures and do not implicate specific people or provide any substantive details.  Additionally, the information that is provided in the requests for extension has largely been disclosed by the United States in papers on file and at court hearings held since the United States elected to intervene.

In short, the court agrees that after the government has elected to intervene, the burden is on the government to show good cause for documents on file to remain sealed.  The government has not met its burden.  Moreover, an *in camera* review of the requests for extension indicates no sensitive information, substantive details or methods of investigation will be disclosed that outweigh the public's right to know the contents of judicial files and records, or Defendants' need to evaluate the sealed materials for the purposes described, and the public's right Accordingly,

**IT IS ORDERED** that Defendants' Motion to Unseal Related Actions (Dkt. #117) is **GRANTED**.  The clerk of court shall unseal sealed documents in both consolidated actions (Case no 2:13-cv-01283 and 2:13-cv-0167).

DATED this 30th day of December, 2015.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE