UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOANNE CRETNEY-TSOSIE, et al., | Case No. 2:13-cv-00167-APG-PAL |
| Plaintiffs, | ORDER |
| v. | (Mot Enforce Order – Dkt. #95) |
| CREEKSIDE HOSPICE II, LLC, et al., | |
| Defendants. | |

Before the court is Creekside Hospice II, LLC, Skilled Healthcare, LLC, and Skilled Healthcare Group's ("Creekside") Motion to Enforce the Court's June 30, 2015 Order to United States to Produce False Claims Information and to Show Cause for Non-Compliance (Dkt. #95). The court has considered the motion, Defendants' Supplement (Dkt. #96), the United States' Response (Dkt. #101), Defendants' Notice of New Legal Precedent (Dkt. #134), Notice of Service of Discovery Pursuant to June 30, 2015 Order (Dkt. #135), Sealed Exhibits to Notice of Service (Dkt. #136), Response to Notice (Dkt. #137), Reply to Response to Notice (Dkt. #138), Response to Notice of New Legal Precedent (Dkt. #139), and the arguments of counsel at a hearing conducted September 24, 2015.

## BACKGROUND

### I.     Procedural History

The Complaint (Dkt. #1) was initially filed April 9, 2012, and alleged violations of the federal False Claim Act 31 U.S.C. § 3729 and the Nevada False Claim Act, NRS 357.010. The complaint was initially filed in camera and under seal, but has now been unsealed. The Plaintiff/Relator Joanne-Cretney-Tsosie, United States and State of Nevada filed multiple ex parte applications for an extension of time to consider whether to intervene. The case was originally filed as a sealed case in the unofficial northern district as Case No. 3:12-cv-00190-

1

HDM.  In a sealed Minute Order in Chambers (Dkt. #9) entered February 4, 2015, Judge McKibben entered an order directing transfer from the northern division to the unofficial southern division.  Pursuant to that order, the case was transferred and assigned Case No. 2:12-cv-00167-HDM.  This case was eventually consolidated with another qui tam action filed as Case No. 2:13-cv-01283-GMN-PAL, with this case serving as the base case in a sealed Order (Dkt. #37) entered August 14, 2014.

On August 18, 2014, the district judge entered an Order (Dkt. #38) unsealing the notice of election to intervene in part and to decline to intervene in part filed by the United States and the State of Nevada.  The order also gave the United States and Nevada ninety days to serve their complaint upon the Defendants; ordered the Relator's complaint unsealed upon the filing and service of the United States and Nevada's complaint in intervention; gave Relator ninety days to serve its complaint; required all other papers or orders on file to remain under seal; and lifted the seal on all other matters occurring in this action after the date of the order.  As to the part of the action in which the United States and Nevada declined to intervene, the order required the parties to serve all pleadings and motions filed in that part of the action, including supporting memoranda, upon the United States and Nevada as required by 31 U.S.C. § 3730(c)(3) and NRS 357.103(1).

The United States filed a Second Amended Complaint (Dkt. #52) on November 25, 2014.  Creekside filed a Motion to Dismiss (Dkt. #65) February 26, 2015.  The United States filed a proposed Discovery Plan and Scheduling Order (Dkt. #72) on April 13, 2015.  The same day, the Defendants filed a Motion to Stay Discovery (Dkt. #74) until decision of the Motion to Dismiss.  The court set the parties' proposed Discovery Plan and Scheduling Order (Dkt. #72) and Motion to Stay (Dkt. #74) for hearing on April 28, 2015.  At the hearing, the court denied the Defendant' motion to stay discovery, but indicated that the court would hold regular status and dispute resolution conferences, requiring the parties' to submit any discovery disputes in a joint status report detailing their respective positions with enough specificity to enable the court to decide the disputes without the necessity for further formal briefing.  *See* Minutes of Proceedings (Dkt. #80) and Order (Dkt. #81).

1

## II.     The Parties' Discovery Dispute

2          The first status and dispute resolution conference was set for June 30, 2015.  The parties

3   filed Joint Status Report (Dkt. #84) as ordered.   The government objected to Defendants'

4   document requests as calling for premature expert discovery.   At the time the parties' status

5   report was filed, the responses were not due until July 1, 2015.  The United States and Nevada

6   indicated their intent to formally respond and object to the requests, but outlined their objections

7   in the status report.  The United States objected to Defendants' Document Request No. 9 on the

8   grounds it sought information "within the purview of expert reports."   Request for Production

9   No. 9 requested "an identification of all patients the government contends were ineligible for

10  hospice services under the Medicare program that were provided by Creekside in the time period

11  January 2010, to April 2013, and all supporting documentation to support such contention."  The

12  United States also objected to Interrogatory No. 4 which requested the identification of "each

13  false claim you contend any of the Defendants submitted or caused anyone to submit to the

14  Medicare program for reimbursement."  Subparts of the interrogatory requested identification of

15  the claim by date, name and address of the person who submitted it, patient identification

16  number, and the amount of the claim, as well as the reason the United States and State of Nevada

17  contend the claim was false and how the claim was identified as false.

18          The United States objected to these requests because they sought production of materials

19  that would be provided in expert disclosures due December 18, 2015, under the parties'

20  stipulated Discovery Plan and Scheduling Order (Dkt. #70).   The United States and Nevada

21  represented that they had engaged in a medical review of a large sample of individual patient

22  medical files to determine whether the Defendants admitted and retained patients and billed

23  Medicare and Medicaid for those patients who were not eligible for hospice.   However, the

24  United States repeatedly informed the Defendants during the investigation that the requested

25  patient files were derived from a statistically valid random sample.  Creekside produced 175

26  patient records from the eligibility sample to the government during the investigation before the

27  United States elected to intervene.  The government's request was served January 15, 2013, and

28  the United States argued that service of the request gave the Defendants more time to review the

records than the United States and the State of Nevada, since they had the opportunity to review the records before producing them.  The government's experts had not completed their analysis or formed a final expert opinion.  The United States and Nevada therefore argued that they should not be forced to produce expert opinions prior to the December 18, 2015 deadline for designating experts.

Creekside argued that it was entitled to know the identification of all patients the government maintained were ineligible to receive hospice services.  At a prior April 30, 2015 hearing, the government advised that it had conducted a sample review of 215 patients and found a high percentage were ineligible for hospice services.  The allegations were that the ineligibility was due to the fraudulent conduct of Creekside.  Creekside argued that medical review necessary to analyze alleged clinical ineligibility is time consuming and involves expert review and physician and other professional information.  It also argued that the government had had nearly three years to review the medical records produced by Creekside, and that Creekside would have little time to review the record the government claims comprise ineligible hospice services under the current discovery plan and scheduling order.  Thus, there was no reason to delay discovery of this critical information.

At the June 30, 2015 hearing, the court heard arguments from counsel and directed the Department of Justice "to produce the information with respect to the identification of the patients and the time periods for which [the government] believed false claims were made."  *See* Minutes of Proceedings (Dkt. #86).  Defendants filed the current Motion to Enforce the Court's June 30, 2015 Order on August 13, 2015.  The DOJ produced an identification of ineligible patients, but did not produce the false claims and certification information.  It responded to Request No. 9 stating:

> As required by the Court's July 1, 2015 Order, and based on the information currently available to the United States, the United States responds as follows: the false claims submitted by the Defendants for ineligible patients who are not terminally ill, as defined by Medicare, and as demonstrated by the medical records produced by Creekside for those patients are identified by patients in documents at Bates Nos. USA_CRK_00021918-19, for certain benefit periods yet to be determined.  The United States will

4

supplement its production of responsive, non-privileged information to Request No. 9 as it becomes available.

DOJ provided the identities of 48 patients that it alleges had false certifications due to hospice ineligibility, but did not identify the false claims or the false certifications related to those 48 patients.  It did not identify the time period that claims were made, or the specific certifications it alleges were false.  It also produced, without segregation or identification to the 48 patients, all claims data for all Creekside patients from 2010 to 2013, consisting of over 254 MB of data, 258,000 rows of claims data containing 30.5 million data entries.

Creekside also pointed out that the government has not produced discovery concerning its false claims related to upcoding, and has failed to identify damages for any alleged false claims. It asks that the court enforce its order and required DOJ to fully produce all of the false claims associated with the 48 patients alleged to be ineligible or alternatively, to bar DOJ from supplementing its identification later "in prejudice to Creekside within 48 hours."

The United States' response to the motion to enforce argues that it has provided all information regarding the false claims in its matter that existed as of the time of its response, and would supplement when the information is available.  The government claims it has significantly narrowed the issues in this case and reduced Defendants' workload.  The United States has narrowed the case to three types of false claims: (1) hospice benefits provided to ineligible patients who were not terminally ill; (2) upcoding claims, i.e., billings for more extensive services than actually provided; and (3) double-billing for hospice services already compensated in per diem payments for patient care.

The United States has no intention of proving liability or damages on a claim-by-claim basis.  Rather, the United intends to prove submission of false claims by using a statistically valid random sample of patients and introducing testimony by expert medical professionals who review these records.  The United States insists that it is unable to provide the information Defendants seek because it is expert driven and its experts have not completed their analysis. The court did not order the United States to produce information that does not exist and the motion should therefore be denied.

/ / /

5

1

**DISCUSSION**

2

I.     **Applicable Law**

3

   A.  **Rule 16(f) – Scheduling Orders**

4        Rule 16(f) of the Federal Rules of Civil Procedure authorizes the court to impose

5   sanctions on a party's motion or on its own motion, including any sanction authorized by Rule

6   37(b)(2)(A)(ii–vii), if a party or its attorney fails to obey a scheduling order or other pretrial

7   order.  *Id*.  Sanctions for failure to obey a discovery order include, among other things, striking a

8   party's pleadings in whole or in part or rendering a default judgment against the disobedient

9   party.  Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).

10       Rule 16(f) gives the court broad discretion to sanction attorneys and parties who fail to

11  comply with reasonable case management orders of the court so that they "fulfill their high duty

12  to insure the expeditious and sound management of the preparation of cases for trial."  *Matter of*

13  *Sanctions of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1994) (en banc).  The Ninth Circuit has held

14  that the purpose of Rule 16 is "to encourage forceful judicial management."  *Sherman v. United*

15  *States*, 801 F.2d 1133, 1135 (9th Cir. 1986); *see also* Fed. R. Civ. P. 16 advisory committee's

16  note (stating "explicit reference to sanctions reinforces the rule's intention to encourage forceful

17  judicial management").  Violations of Rule 16 are neither technical nor trivial.  *Martin Family*

18  *Trust v. Heco-Nostalgia Enterprises, Co.*, 186 F.R.D. 601, 603 (E.D. Cal. 1999).  Rule 16 is

19  critical to the court's management of its docket and prevents unnecessary delays in adjudicating

20  cases.  *Id*.  The Ninth Circuit has emphasized that a case management order "is not a frivolous

21  piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."

22  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal quotations

23  and citations omitted).  Disregard of a court order undermines the court's ability to control its

24  docket and rewards the indolent and cavalier.  *Id*.

25       Violations of a scheduling order may result in sanctions including dismissal under Rule

26  37(b)(2)(C).  *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011) (internal quotations

27  omitted).  *See also Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012).  The goal

28  of Rule 16 is to get cases decided on the merits.  *In re: Phenylpropnolamine (PPA) Products*

1   *Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).  Rule 16(f) "puts teeth into these objectives by

2   permitting the judge to make such orders as are just for a party's failure to obey a scheduling or

3   pretrial order, including dismissal." *Id*.

4       **B. Rule 26(a) – Initial Disclosures**

5       Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure requires parties to make initial

6   disclosures "without awaiting a discovery request."  Rule 26(a)(1)(A)(iii) requires a plaintiff to

7   provide "a computation of each category of damages claimed" and make documents or other

8   evidentiary material on which the computation was based available for inspection and copying.

9   According to the advisory committee note to Rule 26, this requirement is "the functional

10  equivalent of a standing Request for Production under Rule 34."  Fed. R. Civ. P. 26 advisory

11  committee's note to 1993 Amendment.

12      Rule 26(e)(1) requires a party making initial disclosures to "supplement or correct its

13  disclosures or responses  . . . in a timely manner if the party learns that in some material respect

14  the disclosure or response is incomplete or incorrect, and that the additional or corrective

15  information has not otherwise been known to the other parties during the discovery process or in

16  writing."  Fed. R. Civ. P. 26(e)(1).  The advisory committee's note to the 1993 Amendment

17  indicate that "a major purpose" of the Rule 26(a) initial disclosure requirement "is to accelerate

18  the exchange of basic information about the case and to eliminate the paperwork involved in

19  requesting such information." *Id.*

20      A party who fails to comply with its initial disclosure requirements and duty to timely

21  supplement or correct disclosures or responses may not use any information not disclosed or

22  supplemented "to supply evidence on a motion, at a hearing, or at trial, unless the failure was

23  substantially justified or is harmless."  Fed. R. Civ. P. 27(c)(1).  *Yeti by Molly, Ltd. v. Deckers*

24  *Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  A party facing sanctions under Rule

25  37(c)(1) for failing to make its initial disclosures or timely supplement or correct incomplete or

26  incorrect responses bears the burden of establishing that its failure to disclose the required

27  information was substantially justified or is harmless.  *Torres v. City of L.A.*, 548 F.3d 1197,

28  1213 (9th Cir. 2008).

7

### C.  Sanctions Under Rule 37

Rule 37 of the Federal Rules of Civil Procedure authorizes a wide range of sanctions for a party's failure to engage in discovery.  The court has the authority under Rule 37(b) to impose litigation-ending sanctions.   The Rule authorizes sanctions for a party's failure to make disclosures or cooperate in discovery.  Rule 37(c)(1) provides, in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1). Rule 37 gives "teeth" to Rule 26's mandatory disclosure requirements by forbidding the use at trial of any information that is not properly disclosed. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).  Rule 37(c)(1) is a "self-executing, automatic" sanction designed to provide a strong inducement for disclosure. *Goodman v. Staples The Office Superstore*, 644 F.3d 817, 827 (9th Cir. 2011).  Rule 37(a)(3) explicitly provides that an evasive or incomplete disclosure, answer, or response to a discovery obligation "is to be treated as a failure to disclose, answer, or respond." *Id.*  "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827.

In the Ninth Circuit, district courts are given broad discretion in supervising the pretrial phase of litigation. *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011); *Cont'l Lab. Products, Inc. v. Medax Int'l, Inc.*, 195 F.R.D. 675, 677 (S.D. Cal. 2000).  The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)," which is "a recognized broadening of the sanctioning power." *Ollier*, 768 F.3d at 859 (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).  If full compliance with Rule 26(a) is not made, Rule 37(c)(1) mandates some sanction, "the degree and severity of which are within the discretion of the trial judge." *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998).  The Ninth Circuit reviews a district court's decision to sanction for a violation of the discovery rules for abuse of discretion. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citation omitted).

## II.   Analysis and Decision

In oral argument before the court and in its discovery responses, the government has made it clear that it intends to support its liability and damages claims for all three categories of false claims based on what it contends are patient files derived from a statistically valid random sample.  Counsel for the government has repeatedly advised the court and opposing counsel that the United States has not, and will not, undertake an analysis of its claims on a patient-by-patient basis.  The government collected a sample of 215 patients from 3,200 patients who received hospice services from Creekside during the relevant time period.  In response to the court's order directing the government to identify the patients and false claims that were made to the best of the government's ability, the government identified 48 patients for whom it alleges false claims were made.  Creekside maintains that there would be approximately 617 certifications for these 48 patients.  However, the government has not indicated how many of these certifications lead to false claims.  Creekside also argues that it is unduly burdensome and expensive to require it to investigate all 617 certifications when many of them are not likely to be challenged.

In arguments to the court and in response to written discovery, the government has made it clear that its false claims and damages arising from those false claims, arise out of extrapolations made by its experts.  The government has affirmatively represented that it is unable to identify all false claims or false certifications for the 48 patients it claims represent a statistically valid random sample, and that this is information only its experts can provide.  The government asserts that with respect to non-eligible patients, the claim for payment is, itself, a false statement because the claim is an assertion that the patient was eligible to receive hospice services.  The government has also made clear its position is that with respect to upcoded false claims, the false claim is that a certain level of services was provided when it was not.  With respect to double-billed claims, the false claim is that the services were billable when they were not.  The details of which claims are false are not known to the United States, but will be provided once the experts have provided the government with this information.

Creekside argues persuasively that it is unreasonable to require it to complete its discovery and designate a rebuttal expert 30 days after the United States finally provides it with

9

critical information about the specifics of the government's claims. This is especially true because Creekside argues in this motion, and in its motion to dismiss, that mere clinical disagreement with the judgments of certifying physicians is insufficient, as a matter of law, to support a false claim. Creekside also points out that the government's reliance on what is contends is a statistically valid random sample to prove its claims has been criticized, and is under review by the Fourth and Eleventh Circuits.

The court has made it clear in prior hearings that the government may elect how it intends to prove its liability and damages claims, but will not be permitted a "do over" of discovery or expert witness designations if the district judge finds the government's evidence or methodology lacking.

During oral argument counsel for the government conceded that it was a mistake to submit a proposed discovery plan and scheduling order following LR 26-1(e) which makes expert disclosures due 60 days before the discovery cutoff and rebuttal expert reports due 30 days later. The court will modify the discovery plan and scheduling order deadlines to mitigate the prejudice to the Defendants caused by the government's inability to disclose crucial discovery after deciding Creekside's pending motion to stay based on a case accepted for *certiorari* by the Supreme Court. (Dkt #144). The court will also enter an order precluding the government from using or relying on any information not timely disclosed in its expert reports.

The United States has clearly indicated that it is unable to identify all false claims or all false certifications, and is relying upon the extrapolations made by its experts from what it regards as a statistically valid random sample of 48 patients. Having elected to prove its claims by this method, the United States will be precluded from altering its liability or damages theory and method of proof. The United States will be precluded from supplementing its list of allegedly ineligible hospice care patients, false certifications of hospice eligibility, false claims made by upcoding, and false claims made by double-billing for hospice services already compensated in per diem payment of patient care not timely disclosed it its expert disclosures. It will also be precluded from claiming any damages attributable to false claims not timely disclosed in its expert disclosures. However, the court will not compel the United States to

produce information it affirmatively represents it does not have and cannot disclose without medical opinion testimony.

**IT IS ORDERED** that Creekside's Motion to Enforce (Dkt. #95) is **GRANTED** to the extent:

1.  The United States will be precluded from supplementing its list of allegedly ineligible hospice patients, and false certifications of hospice eligibility not timely disclosed in its expert disclosures;

2.  The United States will also be precluded from introducing any evidence of false claims for upcoded services, *i.e.*, billing for more services than actually provided, not timely disclosed in its expert disclosures;

3.  The United States will be precluded from introducing any evidence of double-billing for hospice services already compensated in per diem payment for patient care not timely disclosed in its expert disclosures;

4.  The United States is precluded from claiming any damages attributable to false claims not timely disclosed in its expert disclosures;

5.  The United States may not use any information at issue in this motion, not timely disclosed in its expert disclosures, to supply evidence on a motion, at hearing, or at trial.

6.  Any request for relief not specifically addressed in this order is **DENIED**.

DATED this 30th day of March, 2016.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE