# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, ex rel. Joanne Cretney-Tsosie,<br><br>    Plaintiffs<br><br>v.<br><br>Creekside Hospice II, LLC, Skilled Healthcare Group, Inc., and Skilled Healthcare, LLC,<br><br>    Defendants | Case No.: 2:13-cv-00167-APG-PAL<br><br>**Order Granting Motion for Attorneys' Fees and Expenses and Denying Defendants' Motion for Leave to File Surreply**<br><br>[ECF Nos. 215, 218] |

*Qui tam* plaintiff Joanne Cretney-Tsosie moves to recover attorneys' fees and expenses after the Government obtained a $52.19 million global settlement, $10.8 million of which resolves the claims at issue in this case. Defendants Creekside Hospice II, LLC, Skilled Healthcare Group, Inc., and Skilled Healthcare, LLC (collectively, Creekside) oppose the motion. Creekside also requests leave to file a surreply to support its objections. I grant the motion for attorneys' fees and expenses in part and deny Creekside's motion for leave to file a surreply.

## I. BACKGROUND

Cretney-Tsosie initiated this action under the False Claims Act (FCA) in April 2012, alleging that her employer Creekside engaged in a scheme to defraud the Government by billing for hospice patients who were not terminally ill. Cretney-Tsosie first hired Timothy Terry, a solo practitioner with FCA litigation experience, to represent her.[1] Terry received his J.D. in 1978 and has worked in FCA litigation for twenty-seven years, both as a Government attorney

---

[1] ECF No. 215-2 at ¶ 4–9.

and in the private sector.[2] He performed an investigation and filed Cretney-Tsosie's initial *qui tam* complaint.[3] Throughout 2012, Terry researched and investigated claims, made disclosures to the Government, and responded to the Government's requests for assistance.[4] As the case progressed and Terry's workload expanded, Cretney-Tsosie brought on co-counsel because Terry could no longer manage the case on his own as a solo practitioner.[5] Terry anticipated needing co-counsel with complex-litigation experience and resources.[6] Cretney-Tsosie and Terry engaged Stephen Cohen, who has been representing relators in FCA litigation since 1999.[7] Since 2013, Cohen has been of-counsel at Hughes Socol Piers Resnick & Dym (HSPRD), a national firm with a complex-litigation practice.[8]

The Government intervened in this case in August 2014.[9] Cretney-Tsosie remained a party as a *qui tam* relator, and her counsel worked on her behalf in the litigation while working with the Government to develop its case against Creekside.

In June 2017, Genesis Healthcare, on behalf of Creekside, settled this case along with three others for $52.19 million; $10.8 million of that settlement resolves the issues in this case. After settlement, I dismissed all claims except the claims for attorneys' fees and costs under 31 U.S.C. § 3730(d).[10]

---

[2] *Id.* at ¶ 10.
[3] *Id.* at ¶ 17.
[4] *Id.*
[5] *Id.* at ¶ 17–18.
[6] *Id.* at ¶ 18.
[7] ECF No. 215-3 at ¶ 5.
[8] *Id.* at ¶ 12.
[9] ECF No. 34.
[10] ECF No. 200.

## II. DISCUSSION

The FCA includes a mandatory fee-shifting provision that entitles relators in actions where the Government succeeds to "reasonable attorneys' fees and costs."[11] To determine "a reasonable fee award under a federal fee-shifting statute . . . a district court must first calculate the lodestar by multiplying the number of hours expended by the reasonable hourly rate."[12] Generally, the lodestar is presumed reasonable, although district courts may "adjust the lodestar to account for other factors which are not subsumed within [the lodestar analysis]" if circumstances warrant it.[13]

Cretney-Tsosie's motion requests compensation for work by eight attorneys and six paralegals. Her counsel voluntarily reduced the overall requested lodestar by fifteen percent to account for any concerns about their billing records or practices. In opposing the request for fees, Creekside argues that (1) Cretney-Tsosie overstaffed the case and only Terry should recover fees, (2) the requested rates are unreasonable because they are above Nevada market rates, (3) the number of compensable hours for all attorneys should be reduced, and (4) Cretney-Tsosie's counsel is not entitled to requested costs.

### A. The Need for Additional Counsel

Creekside argues that Cohen and the HSPRD attorneys should not be compensated because it was unnecessary to bring them on. It asserts that Cretney-Tsosie's counsel "grossly overstaffed" the case, particularly because the Government intervened and reduced Cretney-

---

[11] 31 U.S.C. § 3730(d)(1).

[12] *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014) (internal quotation and alterations omitted).

[13] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)) (internal quotation marks omitted).

Tsosie's role in the litigation.[14] But Government intervention does not preclude participation by a *qui tam* relator.[15] Cretney-Tsosie is entitled to pick counsel of her choice, and was within her rights to hire additional counsel, especially as the case progressed and the workload grew to be more than Terry could handle on his own. Terry's affidavit shows that it was not possible for him to do the work alone.[16] He states that he was not aware of other Nevada attorneys who represent relators in FCA cases, so he associated with Cohen and HSPRD.[17] Terry also notes that in "every FCA case near the magnitude or scope of this case" in which he was involved, the relator was represented by multiple law firms.[18] It was reasonable to bring in additional counsel to assist Terry. It was also reasonable to expect a group of attorneys to participate when a firm is employed to work on a case. Cretney-Tsosie's counsel made reasonable efforts to curb the number of hours billed by all attorneys working on this case,[19] and HSPRD limited the number of attorneys to those who worked more than fifteen hours on the case.[20]

The declarations from Terry, Cohen, and Berger-White illustrate the complexity of this case, the large amount of work required, and the risks of taking on an FCA relator's case. All attorneys discussed in Cretney-Tsosie's motion are entitled to fees, and I will calculate the lodestar based on hours submitted for all attorneys and paralegals.

/ / / /

---

[14] ECF No. 216 at 18.
[15] *See* Part II.C.6., *infra*.
[16] ECF No. 215-2 at 4–5.
[17] *Id.* at 5.
[18] *Id.* at 4.
[19] ECF Nos. 215-2 at 5–6, 215-3 at 5–6, 215-4 at 9–10.
[20] ECF No. 215-4 at ¶ 27.

### B. Reasonable Rate

A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the relevant community.[21] "Generally, the relevant community is the forum in which the district court sits."[22] The party seeking an award of fees must submit evidence supporting the rates claimed.[23] "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."[24] In calculating a reasonable fee award, I have discretion to reduce an attorney's rate to ensure that it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[25]

Therefore, I will calculate the lodestar using Nevada rates consistent with this market based on my experience and the affidavits from Nevada attorneys submitted with Cretney-Tsosie's motion.[26] The submitted affidavits demonstrate a range from $250 per hour for junior associates to $630 per hour for more experienced partners.[27] These Nevada attorney affiants also reviewed Cretney-Tsosie's original fee request and stated that it was reasonable given their understanding of Nevada market rates.[28] I have determined that the reasonable hourly rates for the attorneys and paralegals are as follows:

---

[21] *Gonzales v. City of Maywood*, 729 F.3d 196, 1202 (9th Cir. 2013).
[22] *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).
[23] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).
[24] *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016).
[25] *Chaudry v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014).
[26] ECF Nos. 215-9 and 215-10.
[27] ECF Nos. 215-9 at ¶ 10, 215-10 at ¶ 9.
[28] ECF Nos. 215-9 at ¶ 14, 215-10 at ¶ 13.

- Terry: $600

- Cohen: $600

- Piers: $600

- Berger-White: $445

- Lederer: $375

- Miara: $375

- Badlani: $360

- Wysong: $300

- Paralegals: $150

**C.  Reasonable Hours**

Creekside raises a host of objections to the number of hours for which Cretney-Tsosie's counsel billed, and it proposes percentage cuts for each.

**1.  Quarter-Hour Billing**

Creekside objects to the total time billed by Terry because he bills in quarter-hour increments, which, it argues, inflates the overall time.  Creekside proposes a fifteen-percent reduction of Terry's total hours to account for this.

Although quarter-hour billing is not unethical or unreasonable, a court may conclude that the "practice of billing by the quarter-hour result[s] in a request for excessive hours."[29] Creekside argues that quarter-hour billing—as opposed to billing in tenths—leads to overbilling

---

[29] *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (reducing total hours by twenty percent because the time sheets were "replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls, and intra-office conferences," all of which "likely took a fraction of the time").

6

because the practice "bills a five minute phone call at two and a half times what an attorney who bills using the standard tenth of an hour increments."[30] This objection, however, presumes that most phone calls last five minutes or less, as opposed to ten to fifteen minutes. Cretney-Tsosie replies that this proposed reduction is excessive, especially on top of the voluntary fifteen-percent reduction already applied.

The fifteen pages of time entries for Terry, totaling over seven hundred hours, include several .25- and .5-hour entries for reading or sending emails, phone calls, setting appointments, and reviewing simple documents, which likely took much less time than billed. It is difficult to tell whether that is the case, but given the likelihood of overbilling a reduction is reasonable to counter that. I thus reduce Terry's total requested hours by five percent, making the total hours for Terry 669.94.

### 2. Block Billing

Creekside objects to all block-billed entries. It identifies roughly 200 entries from Terry and over 400 from Cohen and the HSPRD attorneys as block-billed and proposes a twenty-percent reduction to all hours under this category.

Block billing is "legitimate grounds for reducing or eliminating certain claimed hours, but not for denying all fees."[31] The practice is not inappropriate when the party seeking fees meets the basic requirements of "listing his hours and identifying the general subject matter of his time expenditures."[32] A fee applicant bears the burden of submitting "evidence supporting

---

[30] ECF No. 216 at 16.

[31] *Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 129 (9th Cir. 2008), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014).

[32] *Fischer v. SJP-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotations omitted).

7

the hours worked and rates claims," but is "not required to record in great detail how each minute of his time was expended."[33]

Block billing is generally disfavored because it makes it more difficult for courts to discern how much time was spent on particular activities. But review of the challenged entries here shows that they sufficiently detail the character of work done and are reasonable based on the nature of the case and the outcome. Based on this review and in light of the voluntary reduction to the lodestar, I will not reduce the total hours requested for block billing.

### 3. Travel Time

Creekside asserts that "fees associated with time spent traveling should be disallowed in their entirety."[34] However, "[t]he Ninth Circuit has established that travel time and clerical tasks are reasonably compensated at normal hourly rates if such is the custom in the relevant legal market."[35] Here, the relevant legal market is Nevada, and attorneys in this legal market usually bill time spent traveling at normal rates.[36]

Creekside's argument against travel time is that Cretney-Tsosie's counsel has not shown that it was necessary to travel, but the cases it cites are distinguishable. First, in *Arevalo v. Castro*, out-of-state counsel billed a five-day trip to Las Vegas for a two-hour meeting.[37] In that situation it was reasonable to question the necessity of the trip, but there are no such red flags here. Second, in *Takiguchi v. MRI International*, the court denied fees for travel time because

---

[33] *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).

[34] ECF No. 216 at 13.

[35] *Comcast of Ill. X, LLC v. Jung Kwak*, 2010 WL 3781768 at *6 (D. Nev. Sept. 17, 2010) (citing *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993)).

[36] ECF No. 217-2 at ¶ 5.

[37] *Arevalo v. Castro*, 2017 WL 4532150 at *3 (D. Nev. Oct. 10, 2017).

the requesting party had not shown that it was customary in Nevada to compensate for travel time.[38] Again, that is not the case here. Cretney-Tsosie's counsel does not need to explain why travel was necessary because it is reasonable for counsel from out of state (or city, in Terry's case) to make trips to meet with clients from time to time. It would be unreasonable to disallow compensation for travel time or expenses.

### 4. Vague Entries

Creekside argues that time entries that include redactions "rendered the entries impossible to evaluate for purposes of determining whether the associated services are appropriate to include in any fee award."[39] It proposes a 75 percent cut of all time entries that contain redacted language.

Redacting time entries is legitimate as long as the requesting party is still "furnishing enough information for a court to form a judgment on whether its fees were legitimate."[40] Parties are entitled "for good reason" to redact information "about what went on between client and counsel, and among counsel."[41] Redactions that "refer to the subject matter discussed" do not inhibit a defendant's ability to challenge—or the court's ability to review—the propriety of the entries.[42]

The redactions to which Creekside objects here mainly refer to the subject matter being discussed or the names of witnesses, which Cretney-Tsosie's counsel had the right to redact to preserve privilege. Looking at the challenged entries as a whole, the entries are not rendered

---

[38] *Takiguchi v. MRI Int'l*, 2016 WL 6126971 at *2 (D. Nev. Aug. 31, 2016).
[39] ECF No. 216 at 14.
[40] *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).
[41] *Id.*
[42] *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1329–30 (D. Nev. 2014).

9

impermissibly vague by the redactions. The redactions are proper exercises of privilege and still allow me to evaluate the appropriateness of the entries. I will not reduce the lodestar on this basis.

### 5. "Other Defective Entries"

Creekside includes a catch-all objection covering entries "not already captured" by its other objections.[43] This includes tasks it argues are "administrative in nature," "unrelated to the matter," or "generally unnecessary" (e.g., hours spent working on the un-filed second amended complaint). Aside from listing the entries, Creekside does not note which objections it has to which entries. Instead, it proposed a blanket 50 percent cut to all entries in this category.

That large of a cut requires specificity, and I cannot do that based on Creekside's unspecified objections.[44] "Findings of duplicative work should not become a shortcut for reducing an award without identifying why the requested fee was excessive and by how much."[45]

Creekside does not discuss specific tasks other than the second amended complaint, and cites no legal authority to support its assertion that the tasks billed in these categories are unreasonable. I will not reduce the lodestar on this basis beyond what was already self-imposed by Cretney-Tsosie.

The objection to the time spent on the second amended complaint was properly raised, and I will address it here. Creekside asserts that it is "patently unreasonable" to request compensation for time spent drafting a second amended complaint that was never filed.

---

[43] ECF No. 216 at 15.

[44] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (reversing a 50 percent reduction "over and above the 9 percent cut plaintiff's counsel already imposed on herself" because the district court did not clearly explain the basis for its cut).

[45] *Id.*

10

However, it is reasonable to award attorneys' fees for work related to claims that were ultimately unsuccessful as long as the work is "useful" or a task "of a type ordinarily necessary" to secure the final result.[46] An attorney may be entitled to reimbursement for tasks that "at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ."[47]

Just because the amended complaint was never filed does not mean the time spent working on it was wasted. Not every legitimate strategy produces a tangible result. It is likely that a reasonable and prudent FCA attorney would draft an amended complaint for a relator, especially if it is uncertain whether the Government will intervene. Even after the Government intervened, work on the second amended complaint could have been helpful in the relator's role of assisting the Government. I therefore find that it is reasonable for Cretney-Tsosie's counsel to spend time researching and drafting the second amended complaint.

### 6. Post-Intervention Hours

Finally, Creekside argues that I should reduce all hours billed post-intervention by 75 percent because any work undertaken after the Government intervened was unnecessary. But the FCA does not relegate the relator to a spectator's role upon Government intervention. While the Government has the "primary responsibility for prosecuting the action," the relator has "the right to continue as a party to the action," subject to certain restrictions.[48] The statute also incentivizes the relator's participation by considering the extent to which the relator "substantially

---

[46] *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986).

[47] *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (quoting *Twin City Sportservice v. Charles O. Fintly & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)) (internal quotations omitted).

[48] 31 U.S.C. § 3730(c).

contributed to the prosecution of the action" in determining the percentage share of the recovery the relator receives.[49]

The Government can limit the relator's participation in a case, but the relator is still an active participant.[50] The provisions in the FCA that give the relator a role in the action when the Government intervenes serve "the additional purpose of giving a relator the incentive to act as a check that the government does not neglect evidence, cause undue delay, or drop the false claims case without legitimate reasons."[51] "The *qui tam* relator may participate in discovery, engage in motions practice, and participate at trial" after the Government intervenes.[52]

While Creekside objects to the level of Cretney-Tsosie's participation, there is no evidence that the Department of Justice similarly objected. The Government has ample power to control the relator's participation, and it did not attempt to curb Cretney-Tsosie's participation. In fact, it supported Cretney-Tsosie's efforts.[53] The majority of hours billed post-intervention were devoted to tasks relators frequently undertake. I see no reason to reduce post-intervention hours.

### D. Lodestar Calculation

Having considered the defendant's objections and proposed cuts, I now calculate the lodestar figure and subtract Cretney-Tsosie's voluntary fifteen percent.

---

[49] *Id.* at § 3730(d)(1).

[50] *US ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1144 (9th Cir. 1998) (noting that the 1986 FCA amendments "increased the relator's role" in *qui tam* actions).

[51] *US v. Northrop Corp.*, 59 F.3d 953, 963–64 n.8 (9th Cir. 1995) (internal quotation and alterations omitted).

[52] *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 250–51 (4th Cir. 2011).

[53] ECF No. 112 at 13 ("The United States supports the Relator[']s participation in discovery in this case and has worked and continues to work with counsel for Relator Cretney-Tsosie to coordinate the relator's efforts and participation in the litigation.").

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Terry | $600 | 669.94 | $401,964 |
| Cohen | $600 | 180 | $108,000 |
| Piers | $600 | 66.1 | $39,660 |
| Berger-White | $445 | 728.1 | $324,004.50 |
| Lederer | $375 | 184.7 | $69.262.50 |
| Miara | $375 | 29.1 | $10,912.50 |
| Badlani | $360 | 16.2 | $5,832 |
| Wysong | $300 | 151.2 | $45,360 |
| Paralegals | $150 | 303.6 | $45,540 |

Based on that calculation, the total before the fifteen-percent reduction is $1,050,535.50. The voluntary fifteen-percent reduction brings the total fees to $892,955.96.

**E.    Costs**

Title 31 U.S.C. § 3730(d)(1) also awards reasonable costs to *qui tam* plaintiffs in actions in which the Government succeeds. Cretney-Tsosie's counsel requests a total of $22,475.86 in costs: $5,803.77 incurred by Terry and $16,672.09 incurred by HSPRD attorneys. Creekside objects because many of these costs are not allowed under Local Rule 54-11. However, that rule applies to costs taxed under Local Rule 54-1. This rule does not limit the expenses that can be recovered under fee-shifting statutes.[54] The costs here are reasonable. Adding the costs to the lodestar calculated above, the total award is $915.431.82.

/ / / /

---

[54] *See Mathis v. Cty. of Lyon*, 2017 WL 1430606 at *4 (D. Nev. Apr. 19, 2017) (approving copying, travel, and meal costs for Reno lawyer litigating in Las Vegas).

## III. CONCLUSION

IT IS THEREFORE ORDERED that relator Joanne Cretney-Tsosie's motion for attorneys' fees and expenses **(ECF No. 215) is GRANTED IN PART AND DENIED IN PART** as detailed above.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of Relator Cretney-Tsosie and against defendants Creekside Hospice II, LLC, Skilled Healthcare Group, Inc., and Skilled Healthcare, LLC in the amount of $915,431.82 for attorneys' fees and costs.

IT IS FURTHER ORDERED that defendants Creekside Hospice II, LLC, Skilled Healthcare Group, Inc., and Skilled Healthcare, LLC's motion for leave to file surreply **(ECF No. 218) is DENIED.**

DATED this 17th day of September, 2018.

                                             ANDREW P. GORDON
                                             UNITED STATES DISTRICT JUDGE